JONES, Judge:
*1009 ¶ 1 Appellant appeals the dismissal of his complaint seeking recovery for the quantum meruit value of legal services he provided pursuant to a non-written contingent fee agreement. We hold that, in the absence of a written fee agreement, an attorney may not recover the quantum meruit value of his services because unwritten contingent fee agreements are void as against public policy. Accordingly, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2 This case arises from Appellant's representation of the Erhardts (the Clients) from 2011 to 2013 in a personal injury matter. The Clients were initially represented by Attorney Jerry Krumwiede, who then sought Appellant's assistance with an understanding that Appellant would ultimately become primary counsel. Appellant and the Clients never executed a written contingent fee agreement, and Appellant and Krumwiede never entered into a written agreement to divide fees. Following a falling out between Appellant and Krumwiede, the Clients dismissed Appellant as their attorney. Appellant asserts that while involved with the Clients' case, he engaged in "vigorous legal representation of [the Clients]" and performed 428.5 hours of work on their behalf.
¶ 3 The Clients eventually also fired Krumwiede and retained Appellee, Haralson, Miller, Pitt, Feldman & McAnally, P.L.C. (Haralson), to represent them. Haralson ultimately settled the Clients' claims. Appellant, who had previously notified all parties he had placed a charging lien against any recovery obtained as compensation for his work, then demanded payment. When Haralson refused, Appellant sued, alleging unjust enrichment and seeking quantum meruit damages.[2]
¶ 4 Haralson moved to dismiss Appellant's complaint, arguing Appellant's claims failed as a matter of law because he: (1) did not allege the existence of a written contingent fee agreement with the Clients, in violation of the Arizona Rules of Professional Conduct, see Ariz. R. Sup. Ct. 42, ER 1.5(c) (providing that "[a] contingent fee agreement shall be in a writing signed by the client"),[3] and (2) failed to allege the legal representation had been terminated without justification, which, Haralson asserted, was a prerequisite to recovery in quantum meruit . The trial court accepted the parties' stipulation to stay discovery pending resolution of the motion.
¶ 5 In response to the motion to dismiss, Appellant admitted he had no written contingent fee agreement but claimed he "entered into an oral agreement for a division of contingency fees recovered upon success of [the Clients'] suit." Appellant also argued that because his claims "sound in equity," they "survive irrespective of the validity or enforceability of any oral contract between himself and [the Clients]." At a hearing on the motion to dismiss, Appellant's counsel explained:
[W]ell, the [C]lients knew about it and the other attorney obviously knew about it, but ... Mr. Krumwiede and [Appellant] were in the same office, they felt like there was a relationship that-that permitted their-to have a trusting relationship without, you know, without obviously informing the clients they knew that [Appellant] was one of their lawyers and they didn't go through the formality of putting it in writing.
Appellant's counsel stated Krumwiede had a written fee agreement with the Clients and asserted Appellant "would have been operating under that as an associate counsel," but, again, "that part wasn't written, the fee-sharing part wasn't written."
*1010 ¶ 6 The trial court dismissed Appellant's complaint, reasoning: (1) Appellant did not allege the existence of a written fee agreement with either the Clients or Krumwiede, and (2) Appellant's failure to comply with ER 1.5 barred recovery in quantum meruit as a matter of public policy. Although Appellant explicitly conceded in his pleadings and at oral argument that he had no written agreements, he then filed a motion for reconsideration alleging discovery would show Appellant "had Krumwiede's assurance that such written consent had been obtained." The trial court denied the motion for reconsideration and entered final judgment in Haralson's favor. Appellant timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1) and -2101(A)(1).
DISCUSSION
¶ 7 We review an order dismissing a complaint for failure to state a claim de novo . Coleman v. City of Mesa , 230 Ariz. 352, 355-56, ¶¶ 7-8, 284 P.3d 863, 866-67 (2012). We will affirm if the plaintiff would not, as a matter of law, be entitled to relief "under any interpretation of the facts susceptible of proof."Id. at 356, ¶ 8, 284 P.3d at 867 (quoting Fid. Sec. Life Ins. v. State, Dep't of Ins. , 191 Ariz. 222, 224, ¶ 4, 954 P.2d 580, 582 (1998) ).
I. Appellant is Barred from Recovery in Quantum Meruit .
¶ 8 Appellant argues that, even in the absence of a written fee agreement, he may still recover the quantum meruit value of the legal services he rendered. Although "recovery under quantum meruit presupposes that no enforceable written or oral contract exists," 42 C.J.S. Implied Contracts § 62 (2017) ; see also W. Corr. Grp., Inc. v. Tierney , 208 Ariz. 583, 590, ¶ 27, 96 P.3d 1070, 1077 (App. 2004) (citing Blue Ridge Sewer Improvement Dist. v. Lowry & Assocs., Inc. , 149 Ariz. 373, 375, 718 P.2d 1026, 1028 (App. 1986) ), this does not mean the remedy is available in every circumstance where no contract exists. "[E]quitable relief is not available when recovery at law is forbidden because the contract is void as against public policy." Landi v. Arkules , 172 Ariz. 126, 136, 835 P.2d 458, 468 (App. 1992) ; see also Mousa v. Saba , 222 Ariz. 581, 587, ¶ 27, 218 P.3d 1038, 1044 (App. 2009) (denying the plaintiff recovery in unjust enrichment for performance of illegal broker services); Peterson v. Anderson , 155 Ariz. 108, 113, 745 P.2d 166, 171 (App. 1987) (denying recovery for a contract claim of an out-of-state attorney seeking payment pursuant to a fee-splitting arrangement that required him to practice law in a manner that was against public policy).
¶ 9 Appellant argues the principles of Landi and Peterson are inapplicable because the attorneys in those cases requested equitable relief after violating both ethical rules and relevant statutes. See Landi , 172 Ariz. at 131, 835 P.2d at 463 ; Peterson , 155 Ariz. at 111, 745 P.2d at 169. Appellant argues that because he only violated the Arizona Rules of Professional Conduct, but not a statute, the unwritten fee agreements are not void as against public policy and he may still recover quantum meruit damages. We find that such an interpretation would create a distinction where there is no difference.
¶ 10 Public policy is derived from "[t]he collective rules, principles, or approaches to problems that affect the commonwealth or ... promote the general good; [specifically], principles and standards regarded by the legislature or by the courts as being of fundamental concern to the state and the whole of society." Black's Law Dictionary (10th ed. 2014). The rules promulgated by our supreme court to regulate the practice of law establish a portion of the public policy of the state, "have the same force and effect as state statutes," and are "equally binding." Peterson , 155 Ariz. at 112-13, 745 P.2d at 170-71 (citing Valley Nat'l Bank of Ariz. v. Meneghin , 130 Ariz. 119, 122, 634 P.2d 570, 572 (1981) ).
¶ 11 An attorney is permitted to provide services for a fee "contingent on the outcome of the matter for which the service[s are] rendered." ER 1.5(c). However, "[a] contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined." Id. At the time Appellant provided legal services *1011 to the Clients, the Arizona Rules of Professional Conduct allowed "[a] division of a fee between lawyers who are not in the same firm," but "only if ... the client agrees, in a writing signed by the client, to the participation of all the lawyers involved." ER 1.5(e)(2) (2015).[4] These provisions prohibit oral contingent fee and fee-splitting agreements. We will not disregard the clear and unambiguous direction of our supreme court, as promulgated through the ethical rules.
¶ 12 The Arizona Rules of Professional Conduct are designed to prevent harm and protect clients. See In re Zang , 154 Ariz. 134, 144, 146, 741 P.2d 267, 277, 279 (1987) (citing Ohralik v. Ohio State Bar Ass'n , 436 U.S. 447, 463-64, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978) ). An oral agreement for legal services may mislead, misinform, or confuse the client. See ER 1.5, cmt. 2 ("A written statement concerning the terms of the engagement reduces the possibility of misunderstanding."). Moreover, when an attorney fails to follow ER 1.5, one or both parties may later attempt to alter the terms of the representation and/or payment during the course of litigation. A client, dissatisfied with the outcome, may assert he was misled by an unscrupulous legal adviser and refuse to pay the agreed-upon amount, or an attorney may spend more time on a case than anticipated and attempt to increase his recovery to offset those additional expenditures. Such disputes devolve into self-serving recollections of how the agreement was formed and what the parties intended at the litigation's outset. As the disciplinary judge stated in the course of separate proceedings against Appellant in connection with this matter, ER 1.5"avoids precisely the chaos in the attorney client relationship [that Appellant] brought by seeking to obtain a division of the fees contrary to the ethical rules." See In re Levine , PDJ 2017-9033 (State Bar of Arizona disciplinary proceeding Aug. 25, 2017) (decision and order imposing sanctions), at *22.
¶ 13 Reducing a fee agreement to writing ultimately protects both the attorney and the client in the event of a fee dispute and seeks to avoid unnecessary litigation. Appellant did not embrace these protections when he undertook the Clients' representation. His actions violated the Arizona Rules of Professional Conduct, and his reliance upon the asserted existence of oral contingent fee and division of fee agreements are void as against public policy. Therefore, recovery in quantum meruit is not available.
¶ 14 We are not persuaded by extra-jurisdictional case law that suggests an attorney is entitled to recover in quantum meruit even if he violated applicable ethical rules. See, e.g. , Huskinson & Brown, L.L.P. v. Wolf , 32 Cal.4th 453, 9 Cal.Rptr.3d 693, 84 P.3d 379 (2004). Neither the interpretation and application of the Arizona Rules of Professional Conduct, nor this state's public policy is subject to meaningful analysis by applying the law of other jurisdictions. And although Appellant argues that denying him restitution will lead to unjust enrichment, this is "a less weighty consideration than the policy of discouraging illegal bargains." Landi , 172 Ariz. at 136, 835 P.2d at 468 (quoting Dan B. Dobbs, Handbook on the Law of Remedies § 13.5 (1973), and citing Restatement (First) of Restitution § 140 & cmt. a (1937) ). This is particularly true here, where the pitfalls Appellant now faces could have been avoided through simple compliance with the obligations of his profession.
II. The Trial Court's Decision is Supported by the Record.
¶ 15 Appellant argues the trial court improperly "adopted the position" that he associated with Krumwiede without the Clients' written consent. This argument is premised upon his assertion, made for the first time within his motion for reconsideration, that further discovery would reveal evidence Krumwiede had assured him the Clients had "signed off" on Appellant's association.
*1012 ¶ 16 Generally, arguments raised for the first time in a motion for reconsideration are not preserved for appeal. See Evans Withycombe, Inc. v. W. Innovations, Inc. , 215 Ariz. 237, 240, ¶ 15, 159 P.3d 547, 550 (App. 2006) (citing Union Rock & Materials Corp. v. Scottsdale Conference Ctr. , 139 Ariz. 268, 272-73, 678 P.2d 453, 457-58 (App. 1983) ). Moreover, Appellant's argument directly contradicted his prior representations to the trial court, whereby he explicitly admitted, at least twice, that he had no written agreement as mandated by the ethical rules. See supra ¶5. The court assumed nothing; it took Appellant at his word and applied the specific language of ER 1.5 as written. Appellant's own admissions support dismissal, and we find no error. Cf. Adams v. Bear , 87 Ariz. 288, 294, 350 P.2d 751, 755 (1960) ("[A] party is bound by his judicial declarations and may not contradict them in ... subsequent proceedings involving the same parties and questions.") (citations omitted); Martin v. Wood , 71 Ariz. 457, 459-60, 229 P.2d 710, 711-13 (1951) (proscribing "the mischiefs" that would occur "from the destruction of all confidence in the intercourse and dealings of men, if they were allowed to deny that which by their solemn and deliberate acts they have declared to be true") (quoting Hatten Realty Co. v. Baylies , 42 Wyo. 69, 290 P. 561, 566 (1930) ); Miles v. Franz Lumber Co. , 14 Ariz. 455, 457, 130 P. 1112, 1113 (1913) ("[A party] should not be permitted to 'blow hot and cold' with reference to the same transaction, or insist at different times on the truth of each of two conflicting allegations according to the promptings of his private interest.") (quotation omitted).[5]
III. The Trial Court's Dismissal Was Not Procedurally Deficient.
¶ 17 Appellant argues the trial court's decision "was tainted by factual findings regarding matters outside the body of the complaint," suggesting the court effectively and improperly converted the motion to one for summary judgment before Appellant had time to conduct discovery. This argument is not well-taken. First, Appellant stipulated to the stay of discovery pending resolution of the motion to dismiss, suggesting he already had within his possession the materials and information necessary to adequately defend the motion. Second, a court may consider matters "central to the complaint," but outside the pleadings, when ruling on a motion to dismiss. Strategic Dev. & Constr., Inc. v. 7th & Roosevelt Partners, L.L.C. , 224 Ariz. 60, 64, ¶ 14, 226 P.3d 1046, 1050 (App. 2010) (citing Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. , 267 F.3d 30, 33 (1st Cir. 2001) ). Whether a written contingent fee or division of fee agreement existed was a matter central to the complaint. We therefore find no error in the court's handling of the motion.
¶ 18 Appellant also argues the absence of a written fee agreement is an affirmative defense, which he was not required to preemptively deny within his complaint. But because the record shows Appellant admitted he had no written contingent fee agreement, see supra ¶5, we need not address this contention. With this admission, Appellant foreclosed proof of any set of facts which would entitle him to relief.
CONCLUSION
¶ 19 An attorney wishing to be compensated for his professional services on a contingency basis must have a written fee agreement signed by the client. In the absence of a written contingent fee agreement, an attorney should anticipate that work done in violation of ER 1.5(c) is being undertaken without any meaningful expectation of compensation. For the foregoing reasons, we affirm.

" 'Quantum meruit' literally means 'as much as he deserves,' " and contemplates recovery of a reasonable amount to avoid unjust enrichment. Murdock-Bryant Constr., Inc. v. Pearson , 146 Ariz. 48, 52 & n.4, 703 P.2d 1197, 1201 (1985) (quoting Black's Law Dictionary 1119 (5th ed. 1979) ).

Absent material changes from the relevant date, we cite the current version of rules and statutes.

Effective January 1, 2016, ER 1.5(e)(2) was amended to permit a division of fees between lawyers not in the same firm if they obtained written consent from the client to both "the participation of all the lawyers involved and the division of the fees and responsibilities between the lawyers." ER 1.5(e)(2).

Appellant also asserts the trial court improperly assumed he was terminated from the Clients' representation for cause. However, the court's ruling contains no such findings.